UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-61673-CIV-HUCK/BANDSTRA

UNITED STATES OF AMERICA,
*ex rel.* SANCHEZ,

       Plaintiff,

v.

JAVIER ABUABARA, SR.,
JAVIER ABUABARA, JR.,
JHURY ABUABARA, and
READIX, INC.,

       Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
RELATOR'S COMPLAINT WITHOUT PREJUDICE**

       This matter is before the Court on Javier Abuabara, Sr.'s ("Senior"), Javier Abuabara, Jr.'s ("Junior"), Jhury Abuabara's ("Jhury"), and Readix, Inc.'s ("Readix") (collectively, "Defendants") Motion to Dismiss the Complaint of Qui Tam Plaintiff and Relator Janio R. Sanchez ("Relator") for failure to state a claim for which relief can be granted and failure to state fraud with sufficient particularity under Fed. R. Civ. P. 12(b)(6) and 9(b) ("Motion to Dismiss") (D.E. #20).  For the reasons stated below, Defendants' Motion to Dismiss is GRANTED without prejudice solely with respect to a failure to plead with particularity and Relator is granted leave to amend his Complaint

**I.     BACKGROUND**

       In his Complaint, Relator alleges that Defendants made material misrepresentations in order to fraudulently induce agencies of the government (the Department of Defense and the Army) to award Defendants a contract for communication infrastructure solutions to be used to train American troops in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA").  *See* Compl. ¶¶ 74, 75, 77 and 78.  Relator alleges, among other things, that Defendant Junior falsely certified financial statements that contained "material and intentional

1

misstatements in order to make an insolvent Readix, Inc. appear financially viable to the Department of Defense." Compl. ¶¶36, 38. Relator further alleges that "Readix's material misstatement in its Financial Statements caused the Department of Defense to award the contract to an insolvent company and once Readix was awarded the contract it proceeded to also eliminate all the technical experts it fraudulently induced to assist it to pre-qualify technically." Compl. ¶74.[1] Relator also attributes such misrepresentations to the other Defendants. *See* D.E. #27 p. 10, citing Compl. ¶¶8, 23, 24, 35-51 and 72. The United States has declined to intervene in this case (*see* D.E. #12), but has submitted a statement of interest (*see* D.E. #29) to which both parties have responded (*see* D.E. #32 and 33).

Defendants claim in their Motion to Dismiss that there are three independent bases for dismissal of Relator's Complaint with prejudice: (1) Relator fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) by failing to allege a "false or fraudulent claim" under 31 U.S.C. § 3729(a)(1)(B); (2) Relator fails to plead his claim with particularity under Fed. R. Civ. P. 9(b); and (3) Relator fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) by failing to plausibly plead that Defendants intended to deceive the government. *See* D.E. #20 at 5. Relator has filed a response to the Motion to Dismiss (*see* D.E. #27) and Defendants have filed a reply (*see* D.E. #28) so this motion is ripe for adjudication.

In the following legal analysis, the Court analyzes a threshold issue raised by the Defendants regarding the timing of the submission of the allegedly false financial statements and then analyzes the three bases of dismissal claimed by the Defendants.

---

[1] Relator also suggests in its Response to Defendant's Motion to Dismiss a second theory of fraudulent inducement – that "Defendants violated the FCA when they 'pulled a bait-and-switch with regard to key personnel.'" D.E. #27 at p. 8. Relator claims that "Defendants misrepresented that Readix would employ key personnel – certain qualified and experienced individuals, including Sanchez – to perform the contract." *Id.* at p. 1. The Complaint, however, does not contain any allegations of a key personnel bait-and-switch that would have contributed to the decision of the Department of Defense to award the contract. To the extent Relator claims that the Department of Defense was fraudulently induced to award the contract based on false promises that certain key personnel would perform duties under the contract, Relator may make such allegations in an amended complaint.

## II. LEGAL ANALYSIS

Generally, federal civil complaints need only contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8)); *see also U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002). While a complaint does not need to set forth detailed factual allegations, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The 11th Circuit has made clear that Rule 9(b) applies to actions under the FCA. *See Clausen*, 290 F.3d at 1308-1309. Accordingly, to survive Defendants' Motion to Dismiss, Relator's Complaint not only "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), but Relator must plead allegations of fraud with particularity. For purposes of reviewing Defendants' Motion to Dismiss, all well-pleaded facts in Relator's Complaint and all reasonable inferences drawn from those facts are taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

### a. The Timing of the Submission of the Allegedly False Financial Statements

A threshold question presented by Defendants is whether Relator can maintain that Defendants fraudulently induced the government to award it a contract through false financial statements when "Readix was considered technically qualified to proceed with the bidding process" for the contract one week before the financial statements were actually submitted to the government. This Court concludes that Defendants' claim in this regard is a red herring that would have had no bearing on the government's decision to award the contract and would not bear on Relator's fraudulent inducement theory given the current allegations.

Defendants state the following:

According to the Relator, Readix would not have "technically" qualified [to] participate in the bidding for the project "but for their misstatement of Readix's Financial Statements." Compl. ¶51. The Relator further alleges that "as the result of" the May 14, 2010 presentation, Readix was "considered technically qualified to proceed with the bidding process," yet the financial statements, according to Relator, were not submitted

3

>until one week later – May 21, 2010.  *See id.* at ¶¶ 36, 54.  If the allegedly fraudulent financial statements were central to the government's consideration of Readix, then Relator must explain how Readix could have qualified to bid on the project prior to the submission of the financial statements.  A review of the timeline proffered by Relator makes abundantly clear that his statement that "Defendants knew that Readix would not have financially qualified to bid for the project but for their misstatement of Readix's Financial Statements" is either a careless attempt to shoehorn his allegations into an FCA case or a lie. Compl. ¶51.  Under either iteration, it cannot survive a motion to dismiss. D.E. #20, p. 11.

Defendants, in this excerpt, conflate two separate concepts:  being awarded a government contract on the basis of false financial statements and being qualified to bid for such contract on the basis of false financial statements.  That Relator admits that Readix was technically qualified to bid for the contract prior to its submission of such financial statements only shows that the financial statements had no bearing on Defendants' qualification to bid for the contract.  Being awarded a government contract, however, cannot be equated with being qualified to bid for a government contract.  Defendants cannot undermine Relator's fraudulent inducement theory, which is premised on the award of the contract, by showing that the Department of Defense permitted Defendants to bid on the contract without financial statements unless they can also show that the Department of Defense awarded the contract before the submission of, or without otherwise relying on, the financial statements.  While neither party indicates the date on which the government awarded the contract to Readix, Relator's Complaint implies that it was after the submission of the financial statements which occurred on May 21, 2010 by stating that "[o]n June 16, 2010, the Army issued its Request for Proposal (the "RFP")" (Compl. ¶55) and later stating that "[t]he contract for the project was awarded to Defendant Readix" (Compl. ¶68). Relator's Complaint, in this regard, is insufficiently particular.  Although it appears the Department of Defense would have awarded the contract to Readix after the submission of Readix's financial statements taking Relator's allegations and the inferences to be drawn therefrom as true, to plead such allegation with sufficient particularity in his amended complaint, Relator will need to state precisely when the government awarded the contract to Readix and whether the government relied on the allegedly false financial statements in awarding the contract.

Defendants also misinterpret Relator's statement that "Defendants knew that Readix would not have financially qualified to bid for the project but for their misstatement of Readix's

4

Financial Statements." Taking Relator's allegations and the inferences to be drawn therefrom as true, an insolvent company would not be qualified to bid. Thus, independent of the false financial statements being submitted to the Department of Defense, Defendants were implicitly representing themselves to be financially viable (i.e., not insolvent) in bidding. Thus, Defendant does not undermine Relator's allegation by showing financial statements were submitted after Defendants were technically qualified to bid since the misstatement formed the basis of Defendant's own separate misrepresentation in implying it was financially qualified by bidding. Thus, Defendants' above contention is a red herring that would not have influenced the government's decision to award the contract and would not bear on Relator's fraudulent inducement theory given the current allegations.

### b. Failure to Allege a False or Fraudulent Claim

The parties and the United States agree that the applicable rule of law in this case is 31 U.S.C. § 3729(a)(1)(B), which imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a ***false or fraudulent claim*** (emphasis added)." 31 U.S.C. § 3729(a)(1)(B).[2]

Defendants argue that Relator includes "no allegation, nor any evidence to support, a false or fraudulent claim" and that such absence "renders the Complaint dead on arrival." D.E. #20. Relator, on the other hand, argues, in essence, that every claim submitted under the contract Readix entered into with the Department of Defense should be deemed "false or fraudulent," even if such claims were technically accurate, where the contract itself was originally obtained by means of false statements. *See* D.E. #27. In other words, that the fraud that induced the Department of Defense to enter into the contract tainted each claim submitted pursuant to the contract. While Defendants have a strong argument based on the plain language of the statute given that the claims themselves, standing alone, are not alleged to be "false or fraudulent," the legislative history of the statute and the case law, as discussed below, would appear to support Relator's theory. *See* S. Rep. No. 99-345 (1986); *Harrison v. Westinghouse Savannah River Co.*,

---

[2] Relator, in his Complaint, references a different subsection of the False Claims Act: 31 U.S.C. § 3729(a)(2). Defendants identify this error and presume that "Relator intended to sue under what is now 31 U.S.C. § 3729(a)(1)(B) (and was formerly numbered 31 U.S.C. § 3729(a)(2)). *See* D.E. #20. The United States agrees with Defendants noting that this statute was amended in 2009 as part of the Fraud Enforcement and Recovery Act of 2009 ("FERA") (*see* D.E. #29) and Relator admits that "Defendants' presumption is correct" (*see* D.E. #33).

176 F.3d 776, 785 (4th Cir. 1999); *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 539 (1943). Based on the cases cited by Defendants, it appears that the question of whether allegations of fraudulent inducement deem all claims (even accurate claims) under a fraudulently induced contract "false or fraudulent" is a question of first impression in the 11th Circuit.[3] Even though Defendants cite numerous cases in the 11th Circuit standing for the proposition that a false and fraudulent claim must be submitted, they cite no case law in the 11th Circuit showing that false or fraudulent claims are not deemed submitted by allegations of fraudulent inducement of the underlying contract. Based on the below analysis, this Court concludes that Relator has sufficiently alleged a false or fraudulent claim under the Fed. R. Civ. Pro. 8(a) standard. In the next section, this Court analyzes this question under the Rule 9(b) standard.

First, Defendants argue, not only that no "false or fraudulent claims" were submitted, but that no "claims" were submitted. They contend that "[t]he alleged provision of fraudulent financial statements does not constitute a 'claim' as defined by the FCA." D.E. 27, p. 6. Arguing that there are no allegations or facts that any claim was submitted, Defendants imply, without explanation, that Relator's allegations that the government awarded a contract to Readix and made payments under it is not enough. *Id.* at p.7. Defendants say "[o]ne is forced to surmise that after Readix was qualified for the contract, it invoiced the United States government, and those invoices were paid." *Id.* at p. 5. Relator, on the other hand, argues, in essence, that claims were submitted by virtue of the contract itself.

> A "claim" is defined, in pertinent part, as
>
> any request or demand, whether under a contract or otherwise, for money or property . . . that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf . . . and if the United States Government . . . provides . . . any portion of the money or property . . . or will reimburse . . . any portion of the money or property." 31 U.S.C. § 3729(b)(2)(A).[4]

---

[3] The 11th Circuit typically conflates two questions that the parties, this Order and the *Harrison* case treat separately: (1) whether there is a false or fraudulent claim and (2) whether such claims have been stated with particularity. As a result, the 11th Circuit cases cited by the Defendants with respect to the first question are not at odds with *Harrison*. They simply do not address, as *Harrison* does, whether allegations of fraudulent inducement deem all claims (even accurate claims) under a fraudulently induced contract "false or fraudulent."

[4] The United States points out the definition of the term "claim" was recently revised as part of FERA and that the new language applies to this case. *See* D.E. #29. While this is true, the need to allege a "claim," has not changed so both the pre-FERA and post-FERA cases on this point are applicable. *See, e.g. U.S. ex rel Pervez v. Beth Israel Medical Center*, 736 F.Supp.2d 804,

6

In the instant case, the financial statements are clearly not claims. The claims derive from the financial relationship between the United States and the Defendants under the contract. Relator, in essence, is alleging that the financial statements are false statements that are material to payments under the contract. Relator alleges that "[t]he contract for the project was awarded to Readix [by the Department of Defense]" and "[u]pon information and belief, Defendant Readix has received payment or payments pursuant to the contract [from the Department of Defense] (Compl. ¶68-70, 74). While Relator leaves out the words "Department of Defense" in these allegations, it can be inferred from other allegations that the contract was between Defendants and the Department of Defense. Accordingly, Relator satisfies the elements of a claim by "request[ing] or demand[ing] . . . under a contract . . . money . . . [which request or demand is] presented to an . . . agent of the United States [the Department of Defense]." Although not specifically alleged, the very nature of a contract for services implies, in exchange, the payment of money (i.e., a request or demand for money). It is also notable that, although the United States seems to suggest otherwise, "presentment" is required in this case as the claim concerns an agent of the United States government directly and not a contractor, grantee or other recipient of funds from the United States. *Cf.* D.E. #29 and 31 U.S.C. § 3729(b)(2)(A).[5] In any event, presentment is clearly satisfied since there is an alleged contract under which an agent of the United States makes payments to private parties. Such a demand for money is implied by the

---

811 (S.D.N.Y. Sept. 13, 2010) (The court noted some elements are common to both section 3729(a)(1) and (a)(1)(B): "in each case, there must have been a claim."); *U.S. ex. Rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F.Supp.2d 20, 23 (D.D.C. April 19, 2010) ("both the statutory text and legislative history confirm that the existence of a false claim remains an underlying premise of post-FERA false statement liability").

[5] The United States claims that "31 U.S.C. § 3729(b)(2)(A), as amended by FERA, . . . does not contain a presentment to the government clause." The statute clearly does require presentment, however, on its face. It appears the United States may have misinterpreted the legislative history which says "the language 'paid or approved by the Government' was removed . . . to prevent a new 'presentment' requirement from being read into the section." D.E. #29 at 8 (citing Sen. Rep. No. 111-19, 111th Cong., 1st Sess. at 12). Properly interpreted, this text only applies to cases involving claims made to contractors, grantees, or other recipients of government funds. The intent was to prevent a subcontractor from winning a motion to dismiss because it only made a claim to a general contractor and did not present a claim to the government directly even though the money it was being paid came from the government through the general contractor. In cases, like the instant case, where alleged false claims do not go through an intermediary but concern an agent of the government directly, presentment is an element of such claim.

nature of the contract and thus is implicitly "presented" to the government. Accordingly, Relator has alleged claims.

Second, Defendants argue that Relator has failed to allege "false or fraudulent" claims. Interestingly, Relator does not dispute whether any invoices submitted were false or fraudulent. Relator argues it is not required to show "false or fraudulent" claims where 'the invoices are tainted because they arise from a contract procured by false or fraudulent claims[6].'" D.E. #27.

Defendants rely on *Harrison* for two related propositions: that "[t]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment,'" *Harrison*, 176 F. 3d at 785 (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995), and that "a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government." *Id.* Defendants, however, ignore *Harrison*'s guidance on what a "false or fraudulent claim" means:

> The phrase "false or fraudulent claim"' in the False Claims Act should be construed broadly. The False Claims Act is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. . . . The Court has consistently refused to accept a rigid, restrictive reading." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). The False Claims Act "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money. Thus, any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach." *Harrison*, 176 F. 3d at 788.

Under Defendants' interpretation, it would not be enough to show that false financial statements had fraudulently induced the government to enter into a contract with Defendants. Defendants would urge that the Relator must also show that individual requests for payments under the contract were false or fraudulent in and of themselves. In similar fraudulent inducement cases, however, courts have not required that the claims submitted be false or fraudulent in and of themselves in spite of the plain language of the statute. *Harrison* provides an exhaustive survey of such cases where "the claims that were submitted were not in and of themselves false [yet] . . . False Claims Act liability attached . . . because of the fraud surrounding the efforts to obtain the contract or benefit status, or the payments thereunder." *Id.* at 788 (citing and discussing *Hess*, 317 U.S. 537; *United States ex. Rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997); *United States ex rel. Pogue v.*

---

[6] Presumably Relator is not using the term "claims" in this quotation in the defined legal sense of the statute, but instead to mean "statements or records" under 31 U.S.C. § 3729(b)(2)(A).

*American Healthcorp., Inc.*, 914 F. Supp. 1507 (M.D. Tenn. 1996); *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419 (E.D.N.Y. 1995); *United States ex rel. Windsor v. Dyncorp. Inc.,* 895 F. Supp. 844 (E.D. Va. 1995); *United States v. CFW Construction Co., Inc.*, 649 F. Supp. 616 (D.S.C. 1986), *dismissed on other grounds*, 819 F.2d 1139 (4th Cir. 1987). While this may appear to be at odds with the plain meaning, it is consistent with the case law and the statute's legislative history.  No 11th Circuit case cited by the Defendants stands in contrast to this proposition or directly addresses it.  *Cf. Clausen*, 290 F.3d 1301 (11th Cir. 2002); *U.S. ex rel Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006); *Hopper v. Solvay Pharmaceuticals*, 588 F.3d 1318  (11th Cir 2009); *U.S. ex rel Seal 1 v. Lockheed Martin Corp.*, 2011 WL 2150052, at *1 (11th Cir. June 1, 2011); *United States v. Aggarwal*, 2005 WL 6011259 at *n9 (M.D. Fla. Feb. 10, 2005);  *U.S. ex rel. Cullins v. Astra, Inc.*, 2010 WL 625279, at *4 (S.D. Fla. Feb. 17, 2010).  *Harrison*, notably, relies on an old U.S. Supreme Court case where government contracts were obtained via collusive bidding for the proposition that "each claim submitted under the contracts constituted a false claim":

> This fraud did not spend itself with the execution of the contract.  Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the [government] . . . . The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal-payment of government money to a person who had caused it to be defrauded.  *Harrison*, 176 F.3d at 777 (citing *Hess*, 317 U.S. at 543-544).

The legislative history of the Senate from 1986 as part of a substantial revision of the False Claims Act, which *Harrison* also relies on, took a similar position:

> each and every claim submitted under a contract . . . which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim.  *See* S. Rep. No. 99-345.

While Defendants cite numerous cases in the 11th Circuit standing for the proposition that a false and fraudulent claim must actually be submitted, they cite no case law in the 11th Circuit showing that  false or fraudulent claims are not deemed submitted by allegations of fraudulent inducement of a government contract.  Here, unlike the facts of the cases cited by the Defendants, there are allegations that the government was fraudulently induced to award Readix the contract based on false financial statements making an insolvent company appear financially viable.  Accordingly, this Court is at liberty to follow *Harrison* and find that a false or fraudulent

claim was properly alleged by virtue of Relator's allegations if alleged with sufficient particularity.

### c. Failure to Plead with Particularity

In any event, the Court may not find that a false or fraudulent claim was properly alleged without also concluding that such allegations were made with the particularity required by Fed. Rule. Civ. Pro 9(b).  *See Clausen*, 290 F.3d at 1309 ("we now make clear that Rule 9(b) does apply to actions under the False Claims Act").  The 11th Circuit has explained that Rule 9(b) is satisfied if the Complaint sets forth the following:

(1) precisely what statements were made in what document or oral representations or what omissions were made;
(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same;
(3) the content of such statements and the manner in which they misled the plaintiff; and
(4) what the defendants obtained as a consequence of such fraud.  *Id.* at 1310.

Put another way, "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.  *Id.*

Defendants cite numerous 11th Circuit cases for the proposition that Relator failed to plead any claims with particularity by not alleging that such claims, among other things, specified amounts, dates of filing, identification of filers, to whom the claims were filed and whether defendants received payments as a result.  *See id.*; *Atkins*, 470 F.3d 1350; *Hopper*, 588 F.3d 1318; *Lockheed Martin Corp.*, 2011 WL 2150052, at *1; *Aggarwal*, 2005 WL 6011259 at *n9. Relator, on the other hand, argues that, in light of its allegations regarding Defendant's fraudulent inducement misrepresentations, "it is beside the point whether there is 'substantive mention in the Complaint about Defendants' execution of the contract, the amount of those claims, or whether any of those claims were fraudulent.'"  D.E. 27 p. 10.

While Defendants would urge the Court to focus its analysis on the claims themselves, as is required in the cases cited by Defendants, a finding that all claims under a contract are deemed false or fraudulent by virtue of the contract itself being fraudulently induced suggests that the analysis should instead focus on the particularity of the fraudulent inducement allegations rather than the subsequently filed claims.  Indeed, in *Harrison*, the 4th Circuit alluded to a similar time,

place and substance test as the 11th Circuit with regard to the Rule 9(b) analysis, but its focus was not on the individual claims, but on the circumstances constituting fraud in the inducement. *Harrison*, 176 F. 3d at 784.

Applying the *Clausen* particularity test to the alleged financial viability misrepresentations, it would appear that Relator has sufficiently plead facts with regard to each element with respect to Defendants Junior and Readix, but not with respect to Defendants Jhury and Senior. As noted at the end, however, there is a fatal defect: pleading critical allegations on information and belief when such facts are not peculiarly within Defendant's knowledge. Relator alleges, *inter alia*, the following in his Complaint:

> Sufficient acts proscribed by [the False Claims Act] . . . complained of herein occurred within the Southern District of Florida. Compl. ¶1.
>
> The policies and practices alleged in this Complaint were, on information and belief, established and/or ratified at the highest corporate level of Defendant Readix. Compl. ¶7.
>
> Relator began . . . discussions with Defendants Junior and Jhury, who represented that Defendant Readix would serve the role of Section 8(a) awardee and would place the success of the project – and the well being of American combat troops – above all else. Compl. ¶23.
>
> Relator believed and relied upon the representations and assurances of Defendant Readix made by and through Defendants Junior and Jhury, and Relator relayed these representations and assurances to his contacts at the Department of Defense and the Army. Compl. ¶24.
>
> To that end, upon information and belief, Defendant Readix submitted to the Department of Defense the following statement of Cashflows, Income Statement, Balance Sheet (the "Financial Statements") [omitted]. Compl. ¶35.
>
> Upon information and belief, on or about May 21, 2010, Defendant Junior, as Chief Financial Officer and major shareholder of Readix, Inc., certified to the Department of Defense that the above Financial Statements presented fairly, in all material respects, the financial position of Readix, Inc. at May 21, 2010, December 31, 2009 and December 31, 2008 and that they conformed with United States Generally Accepted Accounting Principles ("GAAP"). Compl. ¶36.
>
> Upon information and belief, the Financial Statements consisted of material and intentional misstatements in order to make an insolvent Readix, Inc. appear financially viable to the Department of Defense. Upon information and belief, Readix, Inc. intentionally incorrectly accounted for its research and development costs in a manner

11

completely inconsistent with GAAP in order to hide the fact that it had been financially insolvent for the past three years. Compl. ¶38.

Upon information and belief, the Defendants knew that under GAAP per Statement of Accounting Standards No. 2 ("FAS2") – Accounting for Research and Development Costs (Attached as Exhibit 2), paragraph 38, Readix, Inc. was required to expense when incurred all research and development costs. Compl. ¶39.

Senior is the alter ego of Readix . . . upon information and belief, he is controlling the execution of Readix's contract with the Department of Defense. Compl. ¶49.

Upon information and belief, the Defendants knew that Readix would not have financially qualified to bid for the project but for their misstatement of Readix's Financial Statements. Compl. ¶51.

Upon information and belief, Defendant Readix has received payment or payments pursuant to the contract. Compl. ¶69.

The first part of the *Clausen* test is that the Complaint must set forth precisely what statements were made in what document or oral representations or what omissions were made. Relator alleges one precise statement made by Defendant Junior on behalf of Defendant Readix in alleging a certification of false financial statements. *See* Compl. ¶¶36 and 38. Relator also identifies an oral representation made by Jhury, which, as discussed below, does not pass muster under the third part of this test, that "Defendant Readix would serve the role of Section 8(a) awardee and would place the success of the project – and the well being of American combat troops – above all else" (*see* Compl. ¶23). Relator does not affirmatively allege any statements made by Senior or omissions by any of the Defendants. Accordingly, while Relator alleges one precise statement made by Junior and Readix relating to the financial viability misrepresentation and one precise statement made by Jhury relating Section 8(a) awardee status, Relator fails to allege any precise statements made or omitted by Defendant Senior.

The second part of the *Clausen* test is that the Complaint must set forth the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same. Here, Relator identifies Junior (on behalf of Readix) as the person responsible for making a false certification (*see* Compl. ¶36) on May 21, 2010 (*see id.*) within the Southern District of Florida (*see* Compl. ¶1). Although geographical "place" does not appear to be stated with particularity, the identification of the false statement within particular financial statements is the more relevant interpretation of the term "place" in the case of a written

document.  Since this is stated precisely, the second element is satisfied with respect to Junior and Readix.  With respect to the statement of Jhury regarding Section 8(a) awardee status, neither time nor place is identified.  Thus, the second element is not satisfied with respect to Jhury.

The third part of the *Clausen* test is that the Complaint must set forth the content of such statements and the manner in which they misled the plaintiff.  Here, with respect to content, Relator is clear that "Readix, Inc. intentionally incorrectly accounted for its research and development costs in a manner completely inconsistent with GAAP."  Compl. ¶38.  This allegedly misled the Department of Defense "by making an insolvent Readix, Inc. appear financially viable to the Department of Defense."  *Id.*  By contrast, Relator does not provide any factual basis for an allegation that the Department of Defense was misled by Jhury's alleged misrepresentation that Readix would serve the role of Section 8(a) awardee and would place the success of the project above all else.  Not only does Jhury's alleged misrepresentation appear to be irrelevant, Relator makes no allegation that Readix did not serve the role of Section 8(a) awardee.  Moreover, it is not shown that Jhury did not place the project above all else.  If Relator intends to pursue a claim against Jhury, Relator will need to precisely state the substance of this alleged misrepresentation, how it was false and how it misled the Department of Defense in his amended complaint.

The final part of the *Clausen* test is that the Complaint must set forth what the defendants obtained as a consequence of such fraud.  This too is satisfied by Junior's false certification because Relator alleges that Defendant Readix received payment pursuant to the contract obtained as a result of the false certification.  *See* Compl. ¶69.

Defendants also claim that Relator's qualification of the most critical allegations upon "information and belief" provides a second reason for this Court to dismiss the Complaint under Rule 9(b).  They cite *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1013-14 (11th Cir. 2005) for the proposition that allegations based on information and belief do not provide an "indicia of reliability" because they fail to provide an underlying basis for such allegations and *U.S. ex rel. Shurick v. Boeing Co.*, 2008 WL 5054739 at *3 (M.D. Fla. 2008) for the proposition that "[i]t is not enough to plead fraudulent acts under the FCA based on information and belief."  Relator, however, points that this is not a categorical rule.  *See* D.E. #27, p. 11.  While "pleadings generally cannot be based on information and belief," the 11th Circuit has stated that "Rule

13

9(b)'s heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *US ex rel. Hill v. Morehouse Med. Assocs., Inc.*, 2003 WL 22019936 *3 (11th Cir. Aug. 15, 2003).

In Relator's Complaint, however, the crucial allegation made on information and belief is not peculiarly within Defendants' knowledge and control: that Defendant Junior certified false financial statements to the Department of Defense. Such information would be equally in the knowledge or control of the Defendants and the Department of Defense. Relator admits it "cannot aver with certainty that the false statements Defendants prepared were transmitted to the government." D.E. #27, p. 12. Moreover, this case has been pending since September 2010, yet Relator does not describe whether it sought to obtain such information from the Department of Defense. Since the Department of Defense would know whether such financial statements were transmitted to it, Relator's failure to obtain this information is a fatal defect in Relator's allegations under Rule 9(b). Because this allegation is the crux of Relator's fraudulent inducement theory, the Court is particularly reluctant to let it survive this stage of the litigation on only information and belief.

Therefore, even the one statement that Relator appears to plead with particularly must also fail because it was made on information and belief without satisfying the exception for information peculiarly known or controlled by the Defendant. Accordingly, Defendants' motion to dismiss is granted because Relator has failed to satisfy the particularity requirement of Rule 9(b).

### d.  *Failure to Allege that the Government was Deceived*

Last, Defendants claim that Relator fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) by failing to plausibly plead "that the government was 'deceived' by any action taken by Defendants." D.E. #20 at p. 14.  Taking Relator's allegations and the inferences to be drawn therefrom as true (and setting aside for the moment the above described "particularity" pleading defects), the Court observes that it is clearly plausible that the Department of Defense could have been misled by false financial statements. Defendants effectively seek to equate disclosure of falsehood with knowledge of falsehood by suggesting that the government was not deceived because "[a]ll of the allegedly 'fraudulent' information was presented to the government in plain sight when the financial statements were provided."

D.E. #20 at p. 13.  Defendants maintain that "[i]f the government believed that R&D should have been characterized solely as an expense, then it could have asked Readix to resubmit the financial statements or it could have independently determined, based on a cursory review of the financial statements, that it was inappropriately characterized (if indeed it was)." *Id.*  The rule that Defendants urge would put the burden of discovering fraud on the government instead of on the party perpetrating the fraud.

Relator is only required to plead that Defendants "knowingly use[d] . . . a false record or statement material to a false or fraudulent [request or demand . . . for money . . . presented to an . . . agent of the United States]." 31 U.S.C. § 3729(a)(1)(B).  ").  Yet, in essence, Defendants are seeking to rebut Relator's allegations that Defendants had "knowledge" of the alleged fraud by showing that the government had the same knowledge. *See U.S. ex rel Kennard v. Comstock Res., Inc.*, 2010 WL WL 2813529, FN 11 (E.D. Tex 2010) ("Government knowledge is not a statutory defense to FCA liability but a means by which the defendant can rebut the government's assertion of the knowing presentation of a false claim").  However a rebuttal, while possibly creating a subsequent factual dispute, is not relevant to the question of whether Relator has adequately stated a claim.

The term "knowingly" means that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth of falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).  The statute is clear that this term requires "no proof of specific intent to defraud." *Id.*  Moreover, knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b).  Relator has alleged "knowledge" generally in various allegations of the Complaint. *See, e.g.,* Compl. ¶38 ("Upon information and belief, the Financial Statements consisted of material and intentional misstatements . . . Upon information and belief, Readix, Inc. intentionally incorrectly accounted for its research and development costs in a manner completely inconsistent with GAAP"); Compl. ¶39 ("Upon information and belief, the Defendants knew that under GAAP . . . Readix, Inc. was required to expense when incurred all research and development costs").  Accordingly, Defendant's efforts to rebut Relator's allegations of knowledge at this stage do not constitute an independent ground for dismissal.

**III.   CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED without prejudice solely with respect to a failure to plead with particularity and Relator is granted leave to amend his Complaint.  If Relator seeks to amend his Complaint, Relator must file such Amended Complaint with this Court by February 7, 2012.

DONE AND ORDERED in Chambers, Miami, Florida, January 26, 2012.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record