UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61673-CIV-HUCK/BANDSTRA

UNITED STATES OF
AMERICA *ex rel.* JANIO R.
SANCHEZ,
         Plaintiff-Relator,
v.

JAVIER ABUABARA, SR.;
JAVIER ABUABARA, JR.; JHURY
ABUABARA; and READIX, INC.,

         Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE

This matter is before the Court on Defendants' Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law (D.E. No. 58), filed August 1, 2012. The Court has reviewed Defendants' Motion and all other relevant materials in the case file. For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice.

### I.    Background

**A. Facts**

This case involves: (1) Relator Janio R. Sanchez ("Relator"); (2) Defendants Javier Abuabara, Sr. ("Senior"), Javier Abuabara, Jr. ("Junior"), Jhury Abuabara ("Jhury"), and Readix, Inc. ("Readix"); and (3) the United States Army and Department of Defense (the "government")[1]. Relator and Defendants initially came together to exploit a business

---

[1] After investigating Relator's claims, the government refused to join this action. The government did, however, request that it be kept apprised of the progress of the case. *See* United States Notice of Election to Decline Intervention 1 (D.E. No. 12), filed July 12, 2011.

1

opportunity with the United States Army, which sought to improve its communication networks at some of its combat training centers and began soliciting bids from prospective contractors.  2d Am. Compl. ¶ 1 (D.E. No. 53), filed July 9, 2012.  Although Relator possessed the technical expertise to complete the job—and was eager to do it—his prior affiliation with the Army made him ineligible to contract directly with the government.  *See id.* at ¶¶ 23, 27, 31.  Relator could, however, perform work for the Army as "an employee or contractor [working] 'behind the scenes,'" *id.* at ¶ 44, and thus  assembled a group of individuals ready and able to perform the Army's project (the "Research Contract"), *see id.* at ¶ 45.  One of Relator's associates, George Tzaneteas, suggested that Relator meet with the Abuabaras to discuss whether the company Jhury and Junior headed, Readix, Inc., could serve as a vehicle through which Relator's company, Athena Technologies, LLC ("Athena-Tek"), could obtain and perform the Research Contract.  *See id.* at ¶ 46.  Relator and his associates saw this arrangement as a legally permissible, end-run around the prohibition against directly contracting with the government.  Relator met with Jhury and Junior sometime in March 2010 to discuss this arrangement and all agreed informally to work together.  *See id.* at ¶¶ 47-49.[2]

In their pitch to the government for the Research Contract, Defendants represented that they intended to "leverage [Relator's] engineering expertise," 2d Am. Compl. Ex. 17 at 8, and that "[t]he Readix, Inc., - Athena-Tek teams will cooperate . . . to make this effort a success by creating synergies exploring each partner's strengths[,]" *id.* at 9.  The government awarded Readix the Research Contract on August 5, 2010.  *See id.* at ¶ 129.[3]

---

[2]  Although Senior was not involved in the preliminary meeting, it was only after he approved the arrangement that Junior and Jhury moved forward with it.  *See id.* at ¶ 48.

[3]  Notably, the Research Contract did not specify that Readix must subcontract with Relator or his company to perform the contract.  *See* Defs.' Mot. to Dismiss 11, 12 (citing 2d Am. Compl. ¶¶146-151).  And in fact, a government representative, in a letter to Defendants, noted that they are "free to manage the personnel they have assigned to this project as they determine most advantageous."  Defs.' Mot. to Dismiss 13.

Both Relator and Defendants contemplated that Relator's role in performing the Research Contract would be "substantial," Defs.' Mot to Dismiss 6. To memorialize this arrangement, the parties signed a "Cooperation Agreement," which, although preliminary in nature, outlined the parties' rights and obligations. *See* 2d Am. Compl. ¶¶ 164-65. The parties' relationship did not, however, end well: the parties were unable to finalize the details of their arrangement and cut ties. In the end, Defendants performed the Research Contract without Relator's assistance.[4] Relator has in turn filed two lawsuits against Defendants: (1) a state court action alleging that Defendants breached their contract with Relator; and (2) here he claims that Defendants violated the False Claims Act, 31 U.S.C. § 3279 *et seq.*, for allegedly falsely telling the government that they intended to use Relator and his associates to perform the Research Contract.

## B. Procedural History

This is Relator's third try to hold Defendants liable for a violation of the False Claims Act. Relator's initial Complaint alleged that Defendants falsely certified financial statements "in order to make an insolvent Readix, Inc. appear financially viable to the Department of Defense." Order Dismissing Relator's Compl. at 2 (D.E. No. 36), filed January 27, 2012. The Court dismissed that Complaint because Relator failed to allege whether the allegedly false financial statements were ever submitted to the government—much less that the government relied on them. *See id.* at 14.

Relator's First Amended Complaint was also defective. The Court, for a second time, dismissed Relator's claim that Defendants submitted falsified financial statements to the

---

[4] The parties disagree whether Readix "severed" Relator and his team from the Research Contract or whether Relator withdrew. *Compare* Defs.' Mot. to Dismiss 3 *with* Resp. 7-8. This distinction is not material to the Court's analysis. It is, however, worth noting that in an email attached—but quoted selectively—in Relator's Second Amended Complaint, *see* ¶ 182, Relator represented to a member of the Army that he withdrew from the project. *See* Defs.' Mot. to Dismiss 9 ("Our consideration to withdraw from this effort has not been taken lightly since it has significant financial impacts to my family.").

3

government when trying to secure the Research because Relator, again, did not allege enough facts from which the Court could reasonably infer that the financial statements were objectively false or that the government relied on them. *See* Hr'g Tr. 28:18-29:7 June 1, 2012 (D.E. No. 50). Relator's second claim—that Defendants represented falsely to the government that Relator and his associates would substantially perform the Research Contract—was also dismissed because Relator did not provide enough facts from which the Court could infer that Defendants never intended to utilize Relator or his associates. *See id.* at 48:25 (noting that Relator's Second Amended Complaint must plead with particularity that Defendants "had a then-present intent" not to hire Relator even though they told the government otherwise). During the hearing on Defendants' Motion to Dismiss, Relator was forewarned: if he did not "buttress[] [his Second Amended Complaint] with specific[] [facts]," *id.* at 52:20-21, from which the Court can infer that that Defendants' representations were "objectively false," then it would be dismissed *with* prejudice, *see id.* at 32:10-12.

In this latest attempt to hold Defendants liable for violating the False Claims Act, Relator has abandoned his first theory of relief because, as he concedes, the claim is no longer actionable in light of the government's assertion that it knew of Readix's financial condition before awarding it the Research Contract.[5] *See* Defs.' Mot. to Dismiss 2 (citing 2d Am. Compl. ¶ 201). Relator continues to allege, however, that Defendants never intended to utilize his services, and thus because they made representations to the contrary, the government was fraudulently induced into awarding Defendants the Research Contract. *See id.* at ¶ 232. Based on these allegations, Relator advances three claims: Count One alleges that Defendants "knowingly present[ed] . . . false claims to the Department of Defense and Army," 2d Am. Compl. ¶¶ 231, 235 (citing 31

---

[5] This series of events—in which Relator has learned, after filing two complaints, that his claim regarding allegedly false financial statements is not factually supported—is demonstrative of the problem with pursuing an ill-advised fishing expedition to reveal an alleged fraud without first exhausting reasonable efforts to discover the facts.

U.S.C. § 3729(a)(1)(A)); Count Two alleges that Defendants knowingly "us[ed] . . . false records or statements [that were] material to a false or fraudulent claim," *id.* at ¶¶ 238, 241 (citing 31 U.S.C. § 3729(a)(1)(B)); and Count Three alleges that Defendants conspired to commit violations of the False Claims Act, *see id.* at ¶ 247 (citing 31 U.S.C. § 3729(a)(1)(C)). Defendants have moved to dismiss all three Counts.

## II.     Legal Standard

When entertaining a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes that all the factual allegations in the Complaint are true and construes them in the light most favorable to the Plaintiff. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted). The plaintiff must, however, present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. J.B. Hunt Transp., Inc.*, 427 Fed. App'x 705, 707 (11th Cir. 2011) (per curiam) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir.2004)). Because Relator alleges that Defendants have violated the False Claims Act, satisfying FED. R. CIV. P. 8(a)(2)'s notice pleading requirement is not enough to survive a motion to dismiss. He must also satisfy FED. R. CIV. P. 9(b)'s heightened pleading standard. *See United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002) (noting that a complaint that alleges a claim under the False Claims Act must comply with FED. R. CIV. 9(b)).

Rule 9(b) "requires a party to 'state with particularity the circumstances constituting fraud . . . .'" *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th

Cir. 2012) (citing Fed. R. Civ. P. 9(b)).  This means a complaint must allege facts as to the "time place, and substance of the defendant[s'] fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* (internal quotation marks omitted) (citing *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). Thus, "general conclusory allegations of fraud" will not suffice.  *Clausen*, 290 F.3d at 1308 (citation omitted).  The reason for this degree of specificity is to "alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges." *Klusmeier v. Bell Constructors, Inc.*, 469 Fed. App'x 718, 720 (11th Cir. 2012) (unpublished) (internal brackets, ellipses, and quotation marks omitted) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

### III. Discussion

#### A. The Fraudulent Inducement Claims

Although Relator advances claims under two separate provisions of the False Claims Act, *see* 31 U.S.C. § 3729(a)(1)(A), (B), both require that he plead with particularity that Defendants made a *false* statement to the government that they *knew* to be false.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam) ("Sections 3729(a)(1) and (a)(2)[6] of the False Claims Act subject to civil liability entities that knowingly submit false or fraudulent claims to the government for payment or approval.") (citing *Clausen*, 290 F.3d at 1310); *see also United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2012) ("To establish civil liability under the False Claims Act, a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false.").

---

[6] After 2008, 31 U.S.C. § 3729(a)(1) and (a)(2) became 31 U.S.C. § 3729(a)(1)(A) and (B).  The former and current provisions are substantively identical.

Relator describes the allegedly fraudulent scheme in which Defendants participated as follows.  At various points during Defendants' negotiations with the government, they represented that Relator and his associates would be among the key players performing the Research Contract.  *See* Pl.'s Resp. 3 (D.E. No. 65) (citing 2d Am. Compl. ¶¶ 6-8).  For example:

- On May 14, 2010, Jhury and Junior represented to the government that Relator and his associates "would substantially perform the Research Contract," 2d Am. Compl. ¶ 84;

- On May 26, 2010, Jhury emailed the government a preliminary staffing plan that that included Relator and his associates, *see id.* at ¶ 58; and

- All Defendants' proposals to the government in connection with the August 5, 2010 Research Contract award indicated that "the Research Contract would be performed, in all material respects, by Relator and individuals vetted by him," *id.* at ¶ 99; *see also id.* at ¶¶ 102 (the July 6, 2010 iteration), 115 (the July 22, 2010 iteration), 124 (the July 30, 2010 iteration).

Relator contends that these representations were really just a sham—or a "bait-and-switch"—since "[e]ach Defendant knew when making the representation[s] that [they were] false because [Defendants] intended to sever Relator from the Research Conduct or engaged in conduct that drove him away from the Research Contract, knowing *or* recklessly disregarding the ramifications of their conduct."  *Id.* at 3 (emphasis added) (citing 2d Am. Compl. ¶ 9).

To satisfy Rule 9(b)'s test of particularity Relator cannot merely advance the conclusory allegation that Defendants never intended to hire him.  Relator must instead earmark *specific facts* from which the Court can infer that Defendants never intended to utilize him in performing the Research Contract.  *See Hendley v. American Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988).  Acknowledging this requirement, Relator directs the Court's attention to the portion

7

of his Complaint where he alleges: (1) that Senior represented to Relator and his associates that Senior did not need them to perform the Research Contract, *see* Resp. 4-5; 2d Am. Compl. ¶ 135; and (2) that Senior said to one of Relator's associates to "[j]ust bring [him] the project," *id.* From these two statements, Relator contends, the Court can reasonably infer that Defendants, collectively, formulated a plan "not later than early May 2010 . . . to 'take over' the Research Contract," and not utilize Relator. *Id.* at ¶ 118.

The Court disagrees. The Court cannot draw an inference of wrongdoing from just these two statements—even construing them in the light most favorable to the Relator. Senior's statements, at most, suggest he underappreciated Relator's technical background; they do not, however, permit the Court to infer that Defendants, collectively, harbored the same belief about Relator or, more importantly, that they never intended to use him. It *is* possible that Defendants intended to cut Relator loose once they secured the Research Contract. The Court, however, is not prepared to impute this sinister motive to Defendants on the basis of just two vague statements, shorn of context, made by only one Defendant. To do so would "strip all meaning from Rule 9(b)'s requirement of specificity." *Corsello*, 428 F.3d at 1013 (citation and internal brackets omitted). And this is not a road upon which the Court is prepared to travel.[7]

Relator's fallback argument is that Defendants' dilatory tactics during contract negotiations is proof they never intended to hire him. *See* Resp. 5. His Complaint highlights a number of instances where it appears Defendants dragged their feet and attempted to leverage their bargaining position to force Relator to agree to allegedly unfavorable terms. *See, e.g.*, 2d Am. Compl. ¶¶ 156, 158, 167, 189-90. Relator contends that if Defendants were serious about

---

[7] Relator asserts that Defendants admit that "Relator has identified statements which reflect an intent to sever him." Resp. 5 (citing Defs.' Mot. to Dismiss 5) (emphasis omitted). Relator is mistaken. Defendants do not make this concession and instead point to the two statements as examples of statements, "which [Relator] *contends* reflect a[n] intent to 'sever' [him]," Defs.' Mot. to Dismiss 4 (emphasis added).

utilizing his services then the "logical thing" for them to do would have been to enter into a firm agreement with him.  *See* Resp. 5.  And the fact they did not is evidence that their representations to the government that they intended to hire him were untruthful.

The Court disagrees.  Contrary to Relator's contention, driving a hard bargain or employing delay tactics—common tools in a negotiator's toolkit—is not conduct from which the Court can infer that Defendants never intended to hire Relator.  Conduct of this sort happens all the time in the business world—even between parties that fully intend to enter into an agreement.  The Court declines Relator's invitation to substitute speculation for fact and accept that Defendants' conduct reflects an underlying pre-contract intent *not* to include Relator in performing the Research Contract.  Furthermore, contrary to Relator's contention that "he need only show that [Defendants] took actions to sever him," Resp. 4, merely alleging conduct that is consistent with a fraud flunks the test of particularity, and for that matter, Rule 8's plausibility standard, too.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely *consistent* with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (emphasis added).

There is a legally meaningful gap between conduct that looks like business as usual and that which fairly raises an inference of fraud.  In trying to fit this case in the latter category, Relator directs the Court's attention to a number of non-binding cases in which a *qui tam* plaintiff plead a "bait-and-switch" scheme, which he contends were akin to the one alleged here.  *See* Resp. 15.  These cases, however, share a common theme that is absent here: the defendants there made representations to the government that were *objectively* false.  *See Grayson v. Advanced Management Tech., Inc.*, 221 F.3d 580, 582 (4th Cir. 2000) (defendant *certified* that it was in full compliance with government contract even though contract required employment of certain

9

employees and defendant never hired those employees); *United States ex rel. Resnick v. Weill Medical College*, No. 04 Civ. 3088 (WHP), 2010 WL 476707, at *2-*3 (S.D.N.Y Jan. 21, 2010) (defendant medical college *represented* to the National Institute of Health that certain researchers continued to work on the research area specified in the NIH-funded research grant even though defendant *knew* this wasn't the case); *Daewoo Eng'g & Constr. Co., Ltd. v. United States*, 73 Fed. Cl. 547, 587 (2006) (noting in dicta that government contractor violated the False Claims Act because it was contractually required to notify the government when it substituted key personnel, yet failed to do so even after it knew that "key personnel would not be on site for [the] job and [thus] deceived the Government by not updating the list of personnel accordingly"); *cf. Longhi v. Lithium Power Tech, Inc.*, 513 F. Supp. 2d 866, 877-78 (S.D. Tex. 2007) (declining to grant summary judgment in favor of government on "bait-and-switch" claim because "there [was] no direct evidence in the record to show that [defendant] did not intend to hire [the four] scientists").

Unlike in *Daewoo*, *Grayson*, and *Resnick*, Relator does not allege facts indicating that Defendants did or said something that was objectively false. Put another way, Relator does not allege that Defendants continued to represent that Relator would be involved in the Research Contract *after* the point at which he withdrew nor that the two parties had memorialized a binding agreement to work together. Indeed, the opposite seems to be true: once Defendants realized that Relator was not prepared to move forward with the arrangement Defendants' proposed, Defendants informed the government on August 27, 2010 of Relator's non-participation. *See* 2d Am. Compl. ¶ 149; Defs.' Mot. to Dismiss 12 (citing 2d Am. Compl. Ex. M). Thus, Defendants' prior representation that they and Relator would be working hand-in-

hand to perform the Research Contract amounts to, at most, an incorrect forecast—a far cry from an objective falsity.

In sum, Relator's Complaint suffers from, what Judge Henry Friendly coined, "alleging fraud by hindsight." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).  Because things did not work out between him and Defendants, Relator reverse engineers from this fact to conclude that Defendants never intended to hire him and any representations to the contrary were objectively false.  The Court declines Relator's invitation to pile inference upon inference to arrive at the tenuous inference that Defendants perpetrated a fraud on the government.  Rule 9(b) requires that a complaint do more than, as here, narrate a series of events from which the existence of fraudulent conduct is merely possible.  If it were otherwise, then in any case where a plaintiff puts a negative spin on seemingly innocuous conduct defendants would be subject to costly and abusive litigation.  The Federal Rules of Civil Procedure's pleading requirements expressly prohibit this.  *See United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301. 1308 (11th Cir. 2002) ("Rule 9(b) prevents speculative suits against innocent actors for fraud") (citation and internal quotations marks omitted).[8]

## B. The Conspiracy Claim

Finally, Relator alleges in Count Three that Defendants violated 31 U.S.C. § § 3729(a)(3), *see* 2d Am. Compl. ¶ 247, which imposes liability on those who "conspire[] to defraud the government by getting a false or fraudulent claim allowed or paid."  To state a claim under § 3729(a)(3), Relator must first show that there was a "meeting of the minds between two or more people to accomplish a common and unlawful plan." *McAndrew v. Lockheed Martin Corp.*, 206

---

[8] Because the Court concludes that Relator's has not satisfied Rule 9(b)'s particularity requirement in alleging that Defendants made representations that were objectively false, the Court need not address whether Defendants' allegedly false representations were "material," *see* Defs.' Mot. to Dismiss 19, nor whether Relator was required to prove that the government has suffered damages, *see id.* at 17, as a result of Defendants' allegedly false representations.

11

F.3d 1031, 1036 (11th Cir. 2000) (citation omitted).  Because Relator has failed to properly allege that Defendants entered into any sort of agreement—much less one to commit an unlawful act—with any degree of specificity, Count Three of his Complaint does not satisfy Rule 9(b)'s particularity requirement.  Relator's conspiracy claim is also defective for failing to allege that there was a meeting of the minds between two or more people.

> **1. Relator Has Not Adequately Plead that Defendants Entered Into an Agreement to Commit an Unlawful Act**
>
>> a. *Agreement*

To establish a civil conspiracy under 31 U.S.C. §3729(a), a plaintiff must adequately plead that the members of the group *agreed* to defraud the government and performed an overt act in furtherance of this agreement.  *See United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008) ("To prove a conspiracy, [relator] ultimately must be able to show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement.") (citation omitted).  This requires that a plaintiff do more than advance only a "bare legal conclusion" that a conspiracy exists, "unsupported by specific allegations of any agreement or overt act."  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam) (affirming trial court's dismissal of *qui tam* plaintiff's complaint under FED. R. CIV. P. 9(b) because plaintiff did not plead existence of "agreement" or "overt act").  Yet a bare legal conclusion is all Relator advances; he alleges only that "Defendants conspir[ed] to commit violations of 31 U.S.C. § 3279(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B)," and fails entirely to provide any specific facts to show that Defendants entered into any sort of agreement.  *See* 2d Am. Compl. ¶ 247.

b. *Unlawful Act*

Furthermore, it is well established that in order to have an actionable conspiracy under 31 U.S.C. § 3729(a)(3) the alleged conspirators must have agreed to defraud the government. *See Corsello*, 428 F.3d at 1014 ("Section 3729(a)(3) of the False Claims Act imposes liability on those who "conspire[ ] to defraud the government by getting a false or fraudulent claim allowed or paid.") (citing 31 U.S.C. § 3729(a)(3)). In light of the Court's conclusion that Relator has not provided any facts to show that that even a single Defendant intended to defraud the government, the Court cannot conclude that Defendants, as a group, conspired to do so. Thus, because Relator does not offer any specific facts to show that Defendants agreed to defraud the government, much less committed an overt act in furtherance of any such agreement, his Complaint does not satisfy Rule 9(b)'s requirement of particularity.[9]

**2. The Intracorporate Conspiracy Doctrine Bars Relator's Conspiracy Claim**

Even if Relator had adequately plead a conspiracy claim, his claim still fails as a matter of law because of the well-established intracorporate conspiracy doctrine, which provides that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew*, 206 F.3d at 1036. Thus, even though Relator alleges that the three Abuabaras and Readix, conspired to violate the False Claim Act, he fails entirely to address whether Jhury and Junior were acting outside the scope of their employment for Readix when they allegedly made false representations to the government. And indeed, Relator appears to make the opposite assertion in his Complaint—*i.e.*, that Jhury and Junior were Readix's sole officers, directors, and employees. *See* 2d Am. Compl. ¶¶ 64 n.3,

---

[9] The Court finds it noteworthy that in response to Defendants' argument as to why Relator has failed to adequately plead a conspiracy claim, Relator counters with only a terse, two-sentence response that "[t]he conduct Relator alleges—fraud — does not come within the scope of anyone's employment. Nor was Senior, as an alter ego, acting within the scope of any employment." *Id.* at 19.

13

65 (alleging that Jhury was Readix's vice president and Junior its President and that both were directors of Readix). The same applies to Senior—who, although not formally an employee of Readix, was, according to Relator, "Readix's alter ego." *Id.* at ¶ 66. Accordingly, Jhury, Junior, and Senior could not have conspired with each other or Readix.[10] Thus, because § 3729(a)(3) requires that Relator show that there was a meeting of the minds between two or more people, his conspiracy claim fails as a matter of law.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law (D.E. No. 58), is **GRANTED**. It is hereby **ORDERED and ADJUDGED** that the above-styled case is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** in chambers Miami, Florida, on the 19th of October 2012.

_____

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record

---

[10] Relator cannot have it both ways—he cannot allege that Senior was enough of an employee to be held liable for committing a violation of the False Claims Act, *see* 2d Am. Compl. ¶ 66, but not enough of one for purposes of the intracorporate conspiracy doctrine.